THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE GENERAL ELECTRIC COMPANY, Respondent, v. EDWARD P. BARKER and Others, Commissioners of Taxes and Assessments of the City and County of New York, Appellants.

*Taxation — corporation — location of its principal office or place of business.*

Upon a return to a writ of certiorari issued to review an assessment of the property of the General Electric Company for the year 1894 it appeared that the relator was created by a special act of the Legislature; that its by-laws provided that its principal place of business should be in the city of Schenectady, but that there should be an office or place of business in the city of New York; that no change had been made in the principal place of business, except that in the spring and summer of 1892 the general executive and financial business, and before November, 1893, the securities of the corporation, were transferred to Boston; that none of the principal officers of the company were, after October 1, 1893, residents of the State of New York; that the manufacturing business of the company was carried on in Schenectady; that the branch office in New York city was subsequently removed to Schenectady, leaving in New York city only a selling agent, and that the meetings of stockholders had always been held at Schenectady.

*Held,* that the principal office or place of business for transacting the financial concerns of the company was at Schenectady; that it was taxable there, and that the taxing authorities of the county of New York had no jurisdiction to assess the company for the purposes of taxation.

APPEAL by Edward P. Barker and others, as commissioners of taxes and assessments of the city and county of New York, from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of April, 1895, as provides as follows:

"It is ordered and adjudged that the proceedings and adjudication of the said commissioners, in regard to the assessment for taxation for the year 1894, of the relator, upon its personal property and

capital stock, are wholly illegal and void, and that said proceedings and adjudication be, and the same are hereby wholly reversed, vacated and set aside; and it is further

" Ordered and adjudged that the said assessment for taxation for the year 1894, against the relator, upon its personal property and capital stock, be and it is hereby wholly vacated and set aside, and it is hereby directed that the same be stricken from the assessment, and that the name of the relator, the General Electric Company, be stricken from the ' Annual Record of the Assessed Valuation of the Real and Personal Estate' in the city and county of New York; and it is further

" Ordered that any and all tax and taxes levied or assessed against the said relator upon, or based upon, said assessment of its personal property and capital stock, for the year 1894, be wholly vacated and set aside and stricken from the roll; and it is further

" Ordered that the said commissioners of taxes above named forthwith make and do all and every act or acts necessary for the complete carrying out of the provisions of this order."

*James M. Ward,* for the appellants.

*William B. Putney* and *Henry B. Twombly,* for the respondent.

Affirmed on opinion of the Special Term, with costs.

Present — VAN BRUNT, P. J., O'BRIEN and FOLLETT, JJ.

Order affirmed, with costs, on opinion of Special Term.

The opinion of the Special Term was as follows:

RUSSELL, J.:

The commissioners assessed the relator for the year 1894 at the sum of $9,776,934. A warrant is out for the collection of the taxes based upon this assessment to the amount of about $163,000. The relator procured a certiorari to review the assessment. A return was made, some evidence taken upon the hearing at Special Term and the inquiry presents these two questions for solution:

*First.* Had the tax commissioners the right to embrace the relator within their jurisdiction and assess the value of its capital stock?

592    PEOPLE ex rel. GENERAL EL. CO. *v.* BARKER.

First Department, December Term, 1895.    [Vol. 91.

*Second.* If they had this right was their assessment plainly and clearly excessive?

In the view taken by this court, the solution of the first question renders inquiry into the second unnecessary.

The relator was created by special act of the Legislature of this State (Chap. 323 of the Laws of 1892) and was organized in April, 1892. The by-laws provide that the principal place of business shall be in the city of Schenectady in the county of Schenectady and State of New York, but that there shall be an office or place of business in the city of New York, and in such places in the State of New York as the board of directors may determine.

The tax commissioners for New York city assessed the stock of the company in the assessment upon which the taxes for 1893 were to be collected, the relator protesting against its liability to taxation and the amount of the assessment, but finally remaining quiescent under an assessment in New York city of the same amount as the assessment to review which this writ of certiorari was issued. The commissioners, in making the assessment for 1894, had the undoubted right to consider the inquiries made by them in making the assessment for 1893, although it was their duty to make still further inquiries in view of the greatly changed conditions of the financial world from the spring of 1893 to the spring of 1894, and in view also of the possibility of a changed situation of the financial place of business or the base of operations of the company.

For the year 1894, upon the assessment made between the first Monday of September, 1893, and the second Monday of January, 1894, the tax commissioners assessed the personal property of the relator in the sum of $50,000,000. The relator appeared and contested the legality of such assessment upon the grounds referred to, viz., want of jurisdiction to assess at all in New York county, and, secondly, excessive valuation, and furnished some proof which is substantially uncontradicted, except it may be by the knowledge or information acquired by the tax commissioners in the proceedings for the assessment of 1893, and this possible contradiction applies mainly to the issue of excessive valuation.

By the affidavit of Vice-President Ord, of the electric company, it appears that the relator's principal place of business at Schenectady, as provided by the by-laws, has never been officially changed by action

of the directors, except that prior to the 1st of October, 1893, the general, executive and financial business theretofore being done at New York city was transferred to Boston, the accounting department being transferred in June, 1892, and the treasurer's and secretary's departments a few months later, and that all the securities, including the stocks and bonds of the company, were, before the 1st day of October, 1893, taken to the city of Boston and there put in the custody of the vice-president, Ord. The meetings of the board of directors were thereafter held in Boston, and none of the principal officers of the company, after October 1, 1893, were resident in the State of New York. The manufacturing business of the company was carried on in Schenectady, and the branch office formerly in New York was removed to Schenectady, leaving in the city of New York only a selling agent doing business under the designation of "the eastern district." The stockholders' meetings have always been held in Schenectady.

Upon these facts the question of law arises, to which of the two counties of the State of New York (New York or Schenectady) the right to assess the personal property of the company should be given. The State of New York does not seek to impose a double taxation upon the same property, nor will it deprive one county of the State of the revenue to be afforded by taxation of the assessable property within that county because another county, which is a more important financial center, may have at an earlier date in the year made an assessment upon personal property rightfully assessable in the former county.

The general provisions of the Revised Statutes conform to this theory. "All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be, or if such company have no principal office or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on." (R. S. pt. 1, chap. 13, tit. 2, art. 1, § 6 ; 1 R. S. 389.)

Assuming that the general financial operations of the company are now carried on in the city of Boston, still the principal office or place of business and the place where the principal financial

594 PEOPLE ex rel. EDISON EL. CO. *v.* BARKER.

FIRST DEPARTMENT, DECEMBER TERM, 1895. [Vol. 91.

transactions of the company are carried on is in the county of Schenectady; and this view is further confirmed by the General Corporation Act (Laws of 1892, chap. 687, § 3), which provides: "The term 'office of a corporation' means its principal office within the State, or principal place of business within the State, if it has no principal office therein. The office of a stock corporation shall be in the county, town or State in which its business is principally carried on."

It seems clear to me that the taxing authorities of the county of Schenectady have the right to assess the value of the personal property of the relator, and that those of the county of New York have not.

The assessment, therefore, made by the commissioners of New York, should be vacated.